# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES EVANS,

    Plaintiff,

14cv0466
**ELECTRONICALLY FILED**

    v.

RENEWAL, INC. and ANTON LAMONT RUMPH,

    Defendants.

On April 10, 2014, Plaintiff, James Evans, filed his Complaint alleging that Defendant, Renewal, Inc. ("Renewal"), and its employee, Defendant Anton Lamont Rumph ("Rumph"), violated his civil rights.[1] Presently before the Court is Defendant Renewal's Motion to Dismiss Plaintiff's Complaint and/or its Motion to Strike portions of Plaintiff's Complaint and its Brief in Support of same. Doc. no. 19. Plaintiff filed a Brief in Opposition to Defendant Renewal's Motion (doc. no. 22) and Defendant Renewal filed a Reply. Doc. no. 25. For the reasons that follow, this Court will grant Defendant Renewal's Motion to Dismiss.

**I. Standard of Review**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell*

---

[1] Plaintiff filed a Notice of Voluntary Dismissal of former Defendant, County of Allegheny, on July 11, 2014, after the County filed a Motion to Dismiss. Thus, the only remaining Defendants are Renewal and Rumph. See doc no. 23.

*Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

**II. Background**

The allegations set forth below are accepted as true solely for the purposes of deciding Defendant's Motion to Dismiss.

Plaintiff's Complaint alleges that Defendant Renewal is a "domestic, non-profit (non-stock) corporation[,]" which "provides community residential correction and work release services for both male and female offenders referred by the Courts through the [Allegheny County Jail.]" Doc. no. 1, ¶¶ 3, 7. It operates two facilities located within Pittsburgh, Pennsylvania. Id. The Allegheny County Jail entered into a series of contracts with Defendant Renewal to provide alternate housing and community corrections services as a means to address overcrowding. Id., ¶ 8. Eligible inmates referred to Defendant Renewal "are nonviolent, low-risk offenders" and are referred to as "residents." Id., ¶ 8 and 11. Defendant Renewal provides the inmates or "residents" with "a controlled environment" and residents attend AA and NA meetings and "receive counseling, academic, employment, and life-skills training." Id. ¶ 11.

"Renewal employs skilled monitors and case managers to supervise residents 24 hours a day. Monitors are in [a] visible position of authority as they wear uniforms . . . as well as a badge which identifie[s] them as [m]onitors." Id., ¶ 12. Renewal residents are issued a guidebook which provides that residents must, in part, "treat all staff, including [m]onitors with respect or be subject to discipline." Id., ¶ 13.

Plaintiff was convicted of possession of drug paraphernalia and was sentenced to a total of one to four years and 11 months of confinement, and after an initial period of confinement to

"State Correctional Institute – Pittsburgh," he was transferred to Renewal. Id., ¶¶ 9-10. On October 28, 2011, Plaintiff was to serve out the remainder of his state probation – which had been converted to a county probation sentence – at one of the Renewal locations in Pittsburgh. Id., ¶ 10. On March 6, 2012, Plaintiff was released on a "Home Plan" whereby he was to stay with relatives and finish his probation. Id., ¶ 15. On March 22, 2012, Plaintiff's parole/probation officer returned Plaintiff to Renewal's other Pittsburgh-based facility, after Plaintiff informed the officer that he was unable to remain with his relatives. Id., ¶16.

Defendant Rumph was employed as a monitor by the Pittsburgh Renewal site where Plaintiff was sent on March 22, 2012. Id., ¶ 17. Defendant Rumph had a prior criminal history "for illegal drugs and unlawful sale of alcohol." Id., ¶ 18.

On April 23, 2012, while confined to one of the floors of the Renewal facility with other parole violators, Plaintiff secreted away a cell phone that was considered to be "contraband" subject to seizure and destruction. Id., ¶19. Plaintiff, pretending to take a shower, took the cell phone with him into the shower area where he was cornered by Rumph. Id., ¶¶ 20-21. Upon discovering the cell phone, Defendant Rumph sexually assaulted Plaintiff in the shower. Id., ¶¶ 22-24. Eventually, Defendant Rumph allowed Plaintiff to leave the shower area and returned the cell phone to Plaintiff, but made threatening and lewd comments to Plaintiff over the next month. Id., ¶¶ 27-31. Plaintiff received a home pass for Memorial Day weekend, and upon his return to Renewal he "reported the sexual assault and the harassing text messages sent by Defendant Rumph" to his counselor. Id., ¶ 33.

Allegheny County Police investigated Plaintiff's claims against Defendant Rumph, and Defendant Rumph was charged with eight counts of various sex crimes. Id., ¶ 34. Plaintiff alleges that he testified against Defendant Rumph during the criminal trial and claims he suffered

a heart attack while on the stand – forcing the trial to stop and causing Plaintiff to be transported to a hospital. Id., ¶ 35. Ultimately, Defendant Rumph was convicted of one count, criminal solicitation, and his sentence required him to register under SORNA (Sex Offender Registration and Notification Act), and comply with special conditions of the Sex Offender Court. Id. ¶ 36.

Plaintiff, in his Complaint, alleges that the sexual assault has caused him to suffer physical injury (heart palpitations and hypertension) as well as mental injury, including the need for psychiatric treatment and hospitalization. Id., ¶¶ 39-40. Plaintiff also alleges that his ability to hold down a job or attend school has been compromised by the sexual assault and that he was been incarcerated in SCI-Greene after "he lost his temper at a Progress Center staff member and was transferred[,]" which he attributes to his "myriad of psychological diagnoses[.]" Id., ¶ 43.

Plaintiff describes himself as a "prison inmate" as defined by the Prison Rape Elimination Act ("PREA") (42 U.S.C. §15601, *et seq.*) while a resident at Renewal, and contends that he was therefore the subject of a prison rape as defined under PREA. Id., ¶¶ 66, 68. Plaintiff further alleges that Defendant Renewal lacked a custom, policy, or practice requiring its employees to submit to "adequate pre-employment screening" to evaluate the prospective employee's criminal and psychological background as well as his or her propensities for sexual violence. Id., ¶ 72. Plaintiff alleges that Defendant Renewal's "contractual relationship" with Allegheny County makes Defendant Renewal a "person acting under color of state law" for purposes of 42 U.S.C. § 1983. Id., ¶ 64.

In its Motion to Dismiss and Brief in Support, Defendant Renewal claims it is not a state actor under Section 1983, and thus, not subject to liability. Doc. no. 20, pp. 7-9. In addition, Defendant Renewal argues that Plaintiff's Complaint is deficient because it fails to provide a causal link between Defendant's failure to perform a background check of Defendant Rumph

and the sexual assault. Id., p. 9. Finally, Defendant Renewal argues that should this Court not dismiss the Section 1983 claim in its entirety, at a minimum, this Court should strike the portion of the Section 1983 claim that relates to the Fourteenth Amendment. Id., at p. 10.

### III. Discussion[2]

Section 1983 states that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. "To establish liability under Section 1983, a plaintiff 'must establish that [he] was deprived of a federal constitutional or statutory right by a state actor.'" *Iwanicki v. Pennsylvania Dept. of Corrections,* __ Fed. Appx. ___, 2014 WL 4197499 (3d Cir. Aug. 26, 2014), quoting *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

In *Kneipp v. Tedder*, the United States Court of Appeals for the Third Circuit explained that "[s]ection 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws" and held that "[i]n order to establish a section 1983 claim, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged

---

[2] The Court notes that Count I of Plaintiff's Complaint was a Section 1983 claim brought solely against the County of Allegheny. Count I is rendered moot because Allegheny County was voluntarily dismissed by Plaintiff. Doc. no. 23. Defendant Renewal is a defendant in each of the remaining Counts (Counts II through VII). Count II is Plaintiff's Section 1983 claim against Defendant Renewal. All remaining counts (Counts III through VII) are pendant state law claims brought against Defendant Renewal, two of which (Counts V and VI), also include Defendant Rumph.

deprivation was committed by a person acting under color of state law." *Kneipp*, 95 F.3d 1199, 1204 (3d Cir. 1996) (internal quotes and citations omitted).

Defendant Renewal's Brief in Support of its Motion to Dismiss points to three other Western District of Pennsylvania cases that were decided by three different Judges, each of whom determined that Defendant Renewal was <u>not</u> a state actor. *See Goodwin v. Renewal,* civ. no. 11-770, 2012 WL 1428865, *3 (W.D. Pa. April 24, 2012) (M.J. Eddy) ("[n]othing in Goodwin's factual allegations suggests that Renewal or its staff were state actors for purposes of Plaintiff's constitutional claims"); *Simmons v. Renewal, Inc.*, civ. no. 11-302, (W.D. Pa. February 29, 2012) (J. Bissoon) (dismissing Simmons' claims against Renewal, finding that Plaintiff failed to allege state action on the part of Renewal); *Smith v. Director Devline*, civ. no. 04-558, 2006 WL 3145428, *3 (W.D. Pa. 2006) (J. Conti) (adopting M.J. Mitchell's Report and Recommendation: "[T]here is nothing which would support the plaintiff's position that Renewal operates 'under color of law' and for this reason, Renewal is not subject to suit under the provisions of 42 U.S.C. 1983."). In *Smith,* the United States Court of Appeals for the Third Circuit affirmed the District Court's decision concerning Renewal's status holding, "[t]he inquiry regarding whether Renewal's actions can be considered taken under color of state law is fact specific. [citation omitted.] Smith failed to submit any facts from which the District Court could have concluded that Renewal and its employees were acting under the color of state law." *Smith*, 239 Fed. Appx. 735, 736 (3d Cir. 2007).

Plaintiff counters in his Brief in Opposition that a private contractor such as Renewal <u>can</u> be held liable under Section 1983, and argues that the above-cited cases are not binding on this Court and are not factually similar to the facts present in the case at bar. Doc. no. 22, pp. 3-5.

Plaintiff directs this Court to *West v. Altkins*, 487 U.S. 42 (1988), and urges the Court to adopt its rationale.

This Court recognizes that the United States Supreme Court in the *West,* case defined state action as the deprivation caused by the exercise of right or privilege "created by the State . . . or by a person for whom the State is responsible." *West*, 487 U.S. at 49.

With this in mind, this Court adopts Magistrate Judge Mitchell's fine analysis of the law in this area – which provided the foundation for the District Court's decision in *Smith,* affirmed by the Court of Appeals for the Third Circuit, and which references *West* – as follows:

> Although there is no single or uniform test to determine whether a private activity may be attributable to the state, the Supreme Court has developed a framework for resolving that question. To establish state action, the complaining party must show "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action may be fairly treated as that of the state itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1981) (citations omitted).
>
> The state is responsible for a private decision when it has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the state." *Id.* Furthermore, in viewing the extent and nature of the overall relationship between the state and a private entity, state action will not be found unless the state has "so far insinuated itself into a position of interdependence with [the entity] that it must be recognized as a joint participant in the challenged activity." See: *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961).

That is,

> [A] challenged activity may be state action when it results from the State's exercise of "coercive power," *Blum*, when the State provides "significant encouragement, either overt or covert, *ibid.* or when a private actor operates as a "willful participant in joint activity with the State or its agents," *Lugas [v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982) ]. We have treated a nominally private entity as a state actor when it is controlled by an "agency of the State", *Pennsylvania v. Board of Directors of City Trusts of Philadelphia*, 353 U.S. 230, 231 (1957) (per curiam) when

> it has been delegated a public function by the State. Cf., *e.g., West v. Altkins*, [487 U.S. 42, 56 (1988); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 627-628 (1991), when it is "entwined with governmental policies" or when government is "entwined in [its] management or control." *Evans v. Newton*, 382 U.S. 296, 299, 301 (1966).
>
> *Brentwood Academy v. Tennessee Secondary School Athl. Ass'n*, 531 U.S. 288, 296 (2001). Acts of private contractors do not become state acts solely by reason of their engagement in performing public contracts. *Robert S. v. Stetson*, 256 F.3d 159 (3d Cir.2001).

*Smith*, 2006 WL 3145428, *2-3.

Turning to the facts of the instant case and applying the framework described above, the Court first notes that the only factual allegations set forth in Plaintiff's Complaint (which this Court accepts as true for purposes of deciding this Motion) that could be used to "establish state action" on the part of Defendant Renewal, are as follows:

- Renewal is a private entity – not a public one (Id., ¶ 3);

- Renewal provides community residential correction and work release services for offenders referred by the Courts through the Allegheny County Jail (Id., ¶ 7);

- the Allegheny County Jail "has entered in to a series of contracts" with Renewal to provide alternate housing and community corrections services (Id., ¶ 8);

- Renewal employs monitors to supervise residents (Id., ¶ 12);

- Defendant Rumph's criminal history for illegal drugs and unlawful sale of alcohol "should have raised questions" about Renewal's decision to place Rumph in a position of authority (Id., ¶ 18); and

- Renewal lacked appropriate pre-employment screening (Id., ¶ 72).[3]

---

[3] Plaintiff's Complaint also alleges that Renewal's employees, including Defendant Rumph, were persons "acting under color of state law for purposes of 42 U.S.C. §1983." Id., ¶ 48. This Court finds this to be a legal conclusion which this Court does not have to accept as true unless it is

9

The Court finds that these few allegations fail to create the "sufficiently close nexus" between the state and the challenged action" of Defendant Renewal, such that the action (*i.e.* the purported failure to screen Defendant Rumph before hiring him for the monitor position), may be fairly treated as that of the state itself. There are no facts set forth in the Complaint providing a nexus between Renewal's alleged lack of knowledge of Defendant Rumph's criminal history for illegal drugs and unlawful sale of alcohol and Defendant Rumph's propensity for committing sexual assault. Stated another way, even assuming as true that no criminal history check was performed on Defendant Rumph by Defendant Renewal before Renewal made Rumph a monitor, Plaintiff's Complaint fails to allege how Rumph's criminal history for drugs and alcohol would have endowed Renewal with the "knowledge" that Rumph was likely to commit a sexual assault. Rumph's criminal history differs greatly from the crime he purportedly perpetrated here. Thus, there is no nexus between the "State" (even assuming Renewal can be considered a State actor) and the failure to screen Defendant Rumph.

Next, Plaintiff's attempt to label Defendant Renewal a "jail" or "prison" also fails in light of the allegation made by Plaintiff as to Renewal's status as a private entity. Merely contracting with a public entity (such as Allegheny County, or the Commonwealth of Pennsylvania (see doc. no. 22, page 4, footnote 2)), does not transform Defendant Renewal from a private to a public entity. Thus, considering the lack of specific allegations explaining the "extent and nature of the overall relationship" between Allegheny County (and/or the Commonwealth) and Renewal, this Court is unconvinced that the County or Commonwealth has "so far insinuated itself into a position of interdependence" with Renewal, that Renewal "must be recognized as a joint participant in the challenged activity."

---

factually supported. For reasons stated, *infra.,* the Court finds that the conclusion is not so supported.

Finally, Plaintiff's allegations implicating a violation of the PREA are misplaced. This Court finds in accordance with other District Courts within the Third Circuit, holding that that this statute does not create a private cause of action. *See e.g., Washington v. Folino,* 2013 WL 998013 (W.D. Pa. February 28, 2013) (Violations of these statutes [including the PREA] do not create a private cause of action); *Nestor v. Director of Northeast Region Bureau of Prisons*, 2012 WL 6691791, *3 (D. N.J. Dec. 20, 2012) ("The Court is inclined to agree that Plaintiff may not assert a private claim under the PREA").

**IV. Conclusion**

Based on the foregoing law and authority, this Court concludes that Plaintiff's Section 1983 claim against Defendant Renewal, Inc. (Count II) should be dismissed, and will therefore, grant Defendant Renewal's Motion (doc. no. 19) with prejudice as further amendment would be futile.[4]

The remaining allegations and claims set forth in this Complaint (Counts III through VII) asserted against Defendant Renewal and Defendant Rumph are entirely predicated upon state causes of action and will be remanded to State Court.[5]

An appropriate Order follows.

                                                      s/ Arthur J. Schwab
                                                    Arthur J. Schwab
                                                    United States District Judge

cc: All ECF Counsel of Record

---

[4] See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (" . . . a district court may exercise its discretion and deny leave to amend on the basis of . . . futility.").

[5] The State Court is intimately familiar with, and regularly adjudicates, claims of this nature (Count III – negligence; Count IV – negligent hiring; Count V – battery; Count VI – intentional infliction of emotional distress; Count VII – negligent infliction of emotional distress). Accordingly, said state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiff's ability to refile these claims in state court. Also, the dismissal of Plaintiff's state law claims should not work to Plaintiff's disadvantage. See 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiff time to refile his state law claims in state court).